

# United States District Court

__SOUTHERN__ DISTRICT OF __ALABAMA__

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

2251 Dauphin St.
Mobile, AL 36606

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: MJ 09-0039-C

I __Arthur Paul Roche__ being duly sworn depose and say:

I am a(n) __FBI Special Agent__ and have reason to believe
Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**2251 Dauphin St., Mobile, AL 36606 further described as a white two story house with green shutters. The number 2251 is above the front porch on the side of the house facing Dauphin St. The house is located on the south side of Dauphin St. at the intersection of Dauphin St. and Westwood.**

in the __Southern__ District of __Alabama__
there is now concealed a certain person or property, namely (describe the person or property to be seized)

See Attachment __A__ incorporated herein by reference as if fully restated herein.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
Property that constitutes the fruits, evidence, and instrumentalities of crimes against the United States
concerning a violation of Title __18__ United States Code, Section(s) __2422(b)__.
The facts to support a finding of Probable Cause are as follows:

**See Attached Affidavit hereby incorporated by reference as if fully restated herein.**

Continued on the attached sheet and made a part hereof. ☒ Yes  ☐ No

Signature of Affiant
**Arthur Paul Roche
Special Agent
Federal Bureau of Investigation**

Sworn to before me, and subscribed in my presence

__April 3, 2009__ at __Mobile, Alabama__  Date
City and State

**William E. Cassady
U.S. Magistrate Judge**
Name and Title of Judicial Officer

Signature of Judicial Officer



# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Affiant, Arthur Paul Roche, being duly sworn states as follows:

 1. I have been employed as a Special Agent with the Federal Bureau of Investigation (FBI) for ten tears. I am currently assigned to the Mobile (Alabama) Division. I am authorized to investigate violations of Federal Laws, including Title 18 U.S. Code, Section 2422(b) (Use of a facility of interstate commerce to entice a minor to engage in sexual activity). Prior to my employment with the FBI, I was a U.S. Army Officer in the Military Police Corps for five years. For reasons I will detail below, I believe that evidence of violations of Federal Law is likely to be located at the place to be searched.

 2. This Affidavit is made in support of an Application for a Search Warrant to:

  (A) search the residence at 2251 Dauphin Street, Mobile, AL 36606, which is further described as a white two-story house with green shutters. The number 2251 is above the front porch on the side facing Dauphin Street. The house is located on the south side of Dauphin Street at the intersection of Dauphin Street and Westwood.

  (B) search any telephones, computers, and electronic storage media on the premises of 2251 Dauphin Street, Mobile, AL 36606.

 3. This investigation began from an FBI online undercover operation which targets subjects who sexually solicit children in online chat rooms.

 4. Based on my training and experience, I know:

A. That computer hardware, software, documentation, passwords, and data security devices can be important to a criminal investigation for two reasons. First, the objects may have been used to collect, store, and/or transmit information about crimes; and/or secondly, the objects themselves may be instrumentalities, fruits, or evidence of crime;

B. That computers offer an organized, convenient and efficient way to create, transmit, receive and store documents and communications using both the word processing capabilities and the internet/e-mail services connected to computer systems;

C. That computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. When

1

a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space - for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

5. Based upon my knowledge, training and experience, I also know that searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripherals) to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

(A) The volume of evidence. Computer storage devices (like hard disks, diskettes, tapes, laser disks) can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

(B) Technical Requirements. Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, however, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Because computer evidence is vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code embedded in the system as a "booby trap"), a controlled environment may be necessary to complete an accurate analysis. Further, such searches often require the seizure of most or all of a computer system's input/output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer

expert can accurately retrieve the system's data in a laboratory or other controlled environment.

6. On 12/14/2008, the Affiant was working online in an undercover capacity in the Yahoo Messenger Chat Room "Alabama 2". The Affiant was posing as a 15 year old female named Diana Gautier (hereafter referred to as Diana) from Daphne, Alabama. Diana was approached by a Yahoo user with the screen name "gulf_guy64". Diana told the user that she was a 15 year old female from Daphne, Alabama. After being added to Diana's Yahoo Messenger Friend List the user's screen name changed from "gulf_guy64" to "steven". "steven" advised Diana that he was from Mobile and sent a picture of himself to her online. "steven" told Diana to "call me sometime" and provided the phone number "476-4484".

7. This initial contact began a series of online communications and telephone communications between Diana and "steven". These communications took place between 12/14/2008 and 4/02/2009. The online communications occurred using the Yahoo Messenger service, which is a software program that permits real-time communication between Yahoo users. The program permits the exchange of real-time instant text messages, voice, video and photographs using the software program. In order to use the software, a user must install the Yahoo messenger program on their computer, which, in turn connects to the Yahoo computer servers, and then to other Yahoo users. All of the communications and contacts between Diana and "steven" were recorded. The telephone conversations were audiotaped, and the online communications were recorded using computer software which captures and records all activity on the screen of the undercover computer monitor.

8. In the communications "steven" had with Diana, he expressed an interest in meeting her in real life. Diana told "steven" that she was an only child and lived with her mother. Throughout the communications Diana and "steven" talk about being careful not to get caught by her mother and not telling anyone about their relationship.

9. All of the phone communications that Diana had with "steven" were done by calling the phone number 251-476-4484, which "steven" provided in an online chat. An Autotrack Database records search done on phone number 251-476-4484 identified it as belonging to an individual with the initials S. G. at 2251 Dauphin St., Mobile, AL 36606.

10. An Alabama Drivers License Database search showed that the individual with the initials S. G. has been issued current Alabama Drivers License # 3668856. S. G.'s drivers license lists his residence as 2251 Dauphin St., Mobile, AL 36606.

11. An Autotrack Database records search done on the social security number that was listed on the drivers license issued to S. G. identified his current residence as 2251 Dauphin St., Mobile, AL 36606 and his phone number as "476-4484".

12. The Affiant compared the picture that "steven" had sent to Diana and the drivers license photo of S. G., and they show the same person. The Affiant also

3

recognized "steven"'s voice during the phone communications as being consistent and the same voice during all of the phone calls.

    13. In the online and telephone communications "steven" asked Diana if she had become serious enough with anyone in dating to have sex. "steven" told Diana in the conversations online and on the telephone that he has a swimming pool and a hot tub, and that she is welcome to come to his house and use them. "steven" told Diana that they would have to behave themselves when they meet in person but then asked Diana in a subsequent conversation if she has pubic hair yet and if she has ever had an orgasm. In communications on 4/01/2009 "steven" arranged to meet Diana in Daphne on Saturday 4/04/2009 and told her that they can go to the beach at Perdido Key in Florida. "steven" told Diana that he wants her to wear a swimsuit under her clothes when they meet on Saturday and that he will bring towels and sunscreen for them. "steven" told Diana that he wants to kiss her. In a telephone communication on 4/01/2009 "steven" told Diana to go lay down in her bed while he said he was laying down in his. "steven" told Diana to take off her pants and panties and instructs her on how to rub on her vagina in order to have an orgasm. "steven" told Diana to put her fingers inside her vagina and to hold the phone next to them so he can hear it. "steven" then asked Diana to describe how she is going to perform oral sex on him and began to masturbate while on the phone.

    14. In communications on 4/02/2009 "steven" confirmed with Diana that he will still meet her on Saturday and pick her up to go to Perdido Key. "steven" asked Diana what time her mother will be leaving for work to ensure that Diana will be able to get away. "steven" told Diana that when they get to the beach they can "walk together and hold hands and kiss and it will be fine". In a telephone communication on 4/02/2009 "steven" asked Diana if she was dressed to go to bed and then again engaged in sexual conversation with her by instructing her on how to masturbate herself and instructing her on how to perform oral sex on him. "steven" also asked Diana to use her digital camera to take a picture of herself in running clothes and to also take a picture of herself with her top off and to send these pictures to him via the internet. When Diana expressed worry that the picture of her with no shirt on may be discovered on her computer, "steven" talked to her about ways to ensure that does not happen by not saving the image to her computer to send it or that if she has to save it in order to send it to him to then delete the image from her computer so that it will not be discovered.

    15. Throughout the communications "steven" stated that he is at his home when they are communicating online, and mentioned that he is online in the evenings and at lunch, because he goes home from work to eat lunch. He described his home to Diana as having a pool and a hot tub. The communications usually take place in early evening or late at night. The communications on April 1st and April 2nd took place between the following times:

April 1st: 4:50PM to approximately 10:45PM
April 2nd: 8:43PM to approximately 10:50PM

    16. Based upon all the information set forth in this affidavit, the Affiant

respectfully submits that there is probable cause to believe that the individual with the initials S. G., using a computer and a telephone located at 2251 Dauphin St., Mobile, AL 36606, violated Title 18 U.S. Code, Section 2422(b) (Use of a facility of interstate commerce to entice a minor to engage in sexual activity), and that evidence of this crime is located at 2251 Dauphin St., Mobile, AL 36606. In consideration of the foregoing, the Affiant respectfully requests that this Court issue an order authorizing the search of 2251 Dauphin St., Mobile, AL 36606, including any external storage structure located on the property, and any telephones, computers and associated devices contained therein, for the items, materials, and records more specifically identified in Attachment A.

Arthur Paul Roche
Special Agent, FBI
Mobile, Alabama

Sworn to before me and subscribed in my presence this 3rd day of April, 2009.

William E. Cassady
U.S. Magistrate Judge
Mobile, Alabama

5



## Attachment A

1. Any and all records and information relating to the use of a computer or cell phone in interstate commerce to coerce or entice another person to engage in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so.

   The terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, electronic, magnetic, or electro-optical form. These items will be seized and bitstream imaged and/or copied. This imaging will copy all data recorded on the device, including system files, deleted files, and hidden data. Searches of the imaged/copied data for relevant information may be conducted at any location.

2. Any computer documentation consisting of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software or other related items as deemed necessary to facilitate the search.

3. Any software including programs to run operating systems, applications such as word-processing, graphics, or spreadsheet programs, utilities, compilers, interpreters and communication and file sharing programs.

4. Any computer passwords and other data security devices which are designed to restrict access to or to hide or to delete computer software, documentation, or data as deemed necessary to facilitate the search. Data security devices may consist of hardware, software, or other programming code. Data security software or code may also encrypt, compress, hide, or "bobby trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

5. Records and information tending to establish dominion and control of specific computers, workspaces, user accounts, and any other evidence, which is unknown at this time, of the specific crimes and fruits of the crimes described in this affidavit, namely violations of United States Code Title 18 Section 2422 (b).